Sarah Marinho, SBN 293690
Dmitry Stadlin, SBN 302361
Stadlin Marinho LLP
1570 The Alameda, Ste. 212
San Jose, CA 95126
T: (408) 645-7801
F: (408) 645-7802
E: sm@stadlinmarinho.com

Donnie R. Cox, SBN 137950
Law Office of Donnie R. Cox
402 North Nevada Street
Oceanside, CA 92054-2025
T: (760) 400-0263
F: (760) 400-0269
E: drc@drcoxlaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| R.J. and minors R.O., R.A., and R.I., by and through their Guardian Ad Litem, Stephany Sinclair,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO and Does 1 through 50 inclusive,<br><br>Defendants, | Case No. **'22CV1905 WQHMDD**<br><br>COMPLAINT FOR DAMAGES<br>(42 USC §1983/MONELL)<br><br>JURY TRIAL REQUESTED |

**Jurisdiction and Venue**

1. This action is brought pursuant to 42 U.S.C. §1983 to seek redress for Defendants' actions taken under color of law. Defendants' conduct deprived Plaintiffs of their fundamental constitutional rights secured to them under the United States Constitution, including the First, Fourth and Fourteenth Amendment, and under federal and applicable state law protected thereby.

2. Jurisdiction is conferred by 28 U.S.C. §§ 1343(a)(d) and 1343(a)(4), which provides for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. §1983. Jurisdiction is also conferred by 28 U.S.C. §1331 because the claims for relief derive from the United States Constitution and the laws of the United States.

3. The acts and omissions complained of herein occurred in the County of San Diego, and it is believed that all living parties resided in the County of San Diego within the Southern District of California at the time of the occurrences herein.

4. Plaintiffs, individually, make the following allegations and claims upon personal belief, investigation of counsel and on information and belief.

**The Parties**

5. At all times relevant to this Complaint, Plaintiffs R.J., R.O., R.A., and R.I. (hereinafter "Plaintiffs'), were residents of San Diego County, California. Application has been made to appoint STEPHANY SINCLAIR as the Guardian Ad Litem for the minors, R.O., R.A., and R.I. in this action. R.J. was a minor at the time of the incidents complained of herein but has recently turned 18 so he does not require GAL. He requests that the court allow him to proceed using his initials so that he can maintain confidentiality regarding his juvenile dependency history.

6. At all times mentioned herein, the COUNTY OF SAN DIEGO (hereinafter the "COUNTY") was and is a public entity organized and existing under the laws of the State of California.

7. At all times mentioned herein, SAN DIEGO COUNTY HEALTH & HUMAN SERVICES AGENCY (hereinafter "HHSA") was and is subdivision or entity of the COUNTY.

8. At all times mentioned herein, SAN DIEGO COUNTY CHILD WELFARE SERVICES (hereinafter "CWS") was and is a subdivision or entity of the COUNTY and its HHSA.

9. At all times mentioned herein, the POLINSKY CHILDREN'S CENTER, was and is a facility maintained and ran by a subdivision of or entity of the COUNTY.

10. Plaintiffs are ignorant of the true names and capacities of those Defendants sued herein as Does 1 through 50, inclusive, and therefore sues them by such fictitious names. Plaintiffs will amend this Complaint to show the true names and capacities of said DOE Defendants when the same are ascertained or upon proof of the same at the time of trial. Each of the fictitiously named COUNTY Defendants was in some manner liable and legally responsible for the harms sustained by Plaintiffs in that their conduct caused the damages and injuries set forth herein.

11. Plaintiffs are informed and believe and, based upon such information and belief, allege, that each of the Defendants is responsible in some manner for the events and happenings referred to herein and was the legal cause of injury and damages to Plaintiffs as herein alleged.

12. Plaintiffs are informed and believe and, based upon such information and belief, allege, that, at all times herein mentioned, each and every Defendant was the agent and/or employee of their co-Defendants, and each of them, and acted at all relevant times herein under color of the authority of a governmental entity under the statutes, ordinances, regulations, customs and usage of the State of California and/or the United States Constitution and related laws.

13. Whenever this Complaint makes reference to any act of Defendants, such allegations shall be deemed to mean all named Defendants, or their officers, agents,

managers, representatives, employees, heirs, assignees, customers, tenants, who did or authorized such acts while actively engaged in the operation, management direction or control of the affairs of Defendants (or any of them) and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

14. Defendants were the knowing agents and/or alter egos of one another. Defendants directed, ratified, and/or approved each other's conduct and that of each other's agents or employees. Defendants agreed upon, approved or ratified each other's conduct, or otherwise conspired together to commit all of the acts and/or omissions alleged herein.

## FACTUAL ALLEGATIONS

15. Plaintiffs herein are R.J. (born 2004), R.O. (born 2008), R.A. (born 2010) and R.I. (born 2011).

16. This action arises out of conduct that occurred during an investigation and proceedings of a juvenile dependency matter pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code initiated or conducted by Defendants, COUNTY, through its subdivision HHSA., and its CWS, regarding minors R.J., R.O., R.A., R.I.

17. On or about the following dates: June 23, 2013, March 5, 2014, and April 16, 2015, COUNTY, through HHSA, CWS, POLINSKY CENTER and Does 1-50 (its social workers, doctors, nurses, and others employed by, and/or acting as agents of, the COUNTY), conspired to and did deprive Plaintiffs of their rights and privileges under Federal law, and applicable state law supported therein.

18. At no time did Defendant COUNTY, through its CWS social workers and supervisors, seek or obtain judicial authorization for any medical procedures, including any physical examinations or drug testing, of Plaintiffs.

19. On or about the following dates: June 23, 2013, March 5, 2014, and April 16, 2015, COUNTY employees and/or contractors Does 1-50 conducted medical procedures, including genital and anal examinations, blood tests, and drug testing, of all children

4

who were admitted to POLINSKY pursuant to the COUNTY's policies, procedures, practices and/or customs.

20.   These policies, practices and customs continued for many years and are described by other plaintiffs in *Parkes v. County of San Diego*, 345 F.Supp.2d 1071 (S.D.Cal.2004) and *Swartwood v. County of San Diego*, 84 F.Supp.3d 1093 (S.D.Cal.2015). The *Parkes* and *Swartwood* plaintiffs were likewise subjected to unlawful medical examinations.

21.   On June 23, 2013, COUNTY employees and/or contractors Does 1-50 conducted medical examinations, procedures and drug testing of Plaintiffs. At the time of the exams the COUNTY did not have judicial authorization, exigency or parental consent.

22.   On March 5, 2014, COUNTY employees and/or contractors Does 1-50 conducted medical examinations, procedures and drug testing of Plaintiffs. At the time of the exams the COUNTY did not have judicial authorization, exigency or parental consent.

23.   On April 16, 2015, COUNTY employees and/or contractors Does 1-50 conducted medical examinations, procedures and drug testing of Plaintiffs. At the time of the exams the COUNTY did not have judicial authorization, exigency or parental consent.

24.   On or about the following dates: June 23, 2013, March 5, 2014, and April 16, 2015, Plaintiffs R.J., R.O., R.A., and R.I. were taken from their parents to POLINSKY CENTER by COUNTY HHSA and CWS social workers. At this time, the minors were healthy, exhibited no signs of abuse, showed no signs of any type of injury, did not appear to be under the influence of drugs, and were not in need of urgent medical attention.

25.   Upon being taken to POLINSKY, COUNTY agents and/or employees conducted medical procedures included health assessments and a full body inspection, including the Plaintiffs' genital and/or anal areas. The medical procedures, including examination, evaluation, and assessment were performed without cause, without parental knowledge or consent, without a warrant or court order authorizing the medical procedures, including examinations, of the specific child, and were conducted in the absence of

exigent circumstances and/or any need for urgent medical attention. No one attempted to obtain a court order authorizing any medical procedures, including examinations, of any of the Plaintiffs.

26. Plaintiffs' parents were not notified of their children's medical procedures, including examinations and drug testing. No one attempted to obtain Plaintiffs' parents' consent before the exams and tests. Plaintiffs were completely excluded from their parents during the medical procedures, including examinations, and their parents were not allowed to be present or in the nearby vicinity. No attempt was made to obtain Plaintiffs' full medical and health history before the medical procedures, including examinations, occurred.

27. These unwarranted medical procedures, including examinations, and drug testing were performed pursuant to the COUNTY's policies, customs, and practices at the time of the violations. Plaintiffs are informed that at the time of their exams, the COUNTY performed medical procedures, including examinations, on every child that is admitted to POLINSKY. The COUNTY's policies and customs permitted these medical procedures, including examinations, and drug testing without parental notice or consent, without a court order regarding the specific child, and without a need for urgent medical attention or to preserve evidence. As a matter of policy and practice, the COUNTY did not inform parents of the medical procedures, including examinations, excluded parents from attending these medical procedures, including examinations, and did not allow parents to be present in the medical facility, much less the examination room when their child's medical procedures, including examinations, occured. Plaintiffs are informed that the subject medical procedures, including examinations, found no evidence of abuse of any kind and concluded that Plaintiffs appeared healthy and well. The drug tests were negative for all substances.

28. Plaintiffs are informed and believe the COUNTY, through its HHSA and CWS and its health care agency, and/or juvenile health services, collaborated with doctors,

nurses, medical providers and other who participate in conducting these unwarranted, non-consensual and non-emergent medical procedures, including examinations, of children at POLINSKY CENTER, a COUNTY operated facility, without their parent's present, all of which constitutes a traditional government function performed as state actors.

## CLAIM FOR RELIEF - §1983/MONELL

28. Plaintiffs reallege, and to the extent applicable, incorporates herein as if set forth in full, Paragraphs 1 through 28.

29. The right to family association includes a parent's right to make important medical decision for their children, rather than the state (see *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000)). That right includes controlling the nature and scope of any medical procedures, including examinations, that are conducted to their child. Absent parental consent, court order, or exigent circumstances, medical procedures, including examinations, of a child, may not be undertaken at the behest of state officials. Children also have a constitutional right to have their parent be present while they are receiving medical attention or to be in close proximity while all or in part of the medical procedures, including examination, are being conducted. The right of children to have their parents make medical decisions about their health and medical issues, and to be present during their children's medical procedures, including examinations, in the absence of a warrant, parental consent, or emergency, and with parental presence, was clearly established by at least 2000 and the COUNTY and DOES 1 through 50, would know such actions violated Plaintiffs' constitutional rights. Children also have a Fourth Amendment right against unreasonable searches and seizures. The unnecessary, invasive and unlawful medical examinations were violations of their Fourth Amendment rights.

30. The COUNTY knew that its medical procedures, including examinations and drug testing, performed at POLINSKY, violated the constitutional rights of children and their parents due to United States District Court decisions informing the County of such

constitutional violations, including, but not limited to, *Parkes v. County of San Diego*, 345 F.Supp.2d 1071 (S.D.Cal.2004) and *Swartwood v. County of San Diego*, 84 F.Supp.3d 1093 (S.D.Cal.2015). In connection with the *Swartwood* decision, the County agreed to change its policies and procedures concerning medical procedures, including examinations, performed at POLINSKY.

31. On or about June 23, 2013, COUNTY, through its HHSA and CWS and their agents and employees, conducted medical procedures, including examinations, on Plaintiffs R.J., R.O., R.A., and R.I. without parental notice and/or knowledge, without parental consent, without court order specific to the child or the preservation of evidence, and in the absence of exigent circumstances and/or a need for urgent medical care. Plaintiffs' parents were completely excluded from attending these medical procedures, including examinations, and/or being in close proximity.

32. At all relevant times, the COUNTY'S policy, procedure, practice and/or custom was to perform medical procedures, including examinations, on all children being admitted to and/or entering POLINSKY – without court order, parental consent or notification, and/or exigency and by excluding parents from their child's medical procedure, including examination.

33. The COUNTY knew the Ninth Circuit Rulings in *Wallis v. Spencer*, 202 F.3d 1126 (2000) and *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), held that a parent had the right to make important medical decisions for their children, including the nature and scope of any medical procedures, including examinations, that are conducted to their child without unjustified governmental interference, and that children had the right to have their parents be present during their physical and medical examination and assessment; and that the medical procedures, including examinations, of children at POLINSKY violated a family's (parents and children's) constitutional rights. Despite this knowledge, the COUNTY failed to establish policies, procedures, practices and

customs to protect those rights of parents and to allow parents to attend their child's medical procedures, including examination, at POLINSKY.

34. Furthermore, the COUNTY never investigated. counseled or disciplined its employees and/or agents for conducting or performing medical procedures, including examinations, of children at POLINSKY – without consent, court order, exigency or parental presence, and did not do so as to the medical procedures, including examinations, of R.J., R.O., R.A., and R.I. which were conducted without a court order, parental consent or notification, exigency, and parental presence.

35. Furthermore, the COUNTY failed to train its employees and agents on the constitutional rights of a parent, and child, including, but not limited to:

    a.    A child's right to have his or her parent make important medical decisions for that child, which includes the nature and scope of any medical procedures, including examinations, that are conducted to the child;

    b.    That a court order specific to a child, parental consent, and/or exigency is required prior to performing medical procedures, including examinations, on a child outside the presence of his or her parent(s) and without parental consent; and

    c.    That a child is allowed to have his or her parents be present during any medical procedures, including examinations, or to be nearby if there is a proper reason to exclude them.

36. The COUNTY's failure to train, supervisor and/or discipline its employees and agents on these established constitutional protections was a substantial factor in causing Plaintiffs harm. Without adequate training and supervision, COUNTY social workers, employees and agents were unfamiliar with and oblivious to Plaintiffs' constitutional rights, when they subjected R.J., R.O., R.A., and R.I. to the medical procedures, including examinations – without consent, court order, exigency, and/or without their parents' presence.

37. The COUNTY knew or should have known that children could not be subjected to medical procedures, including examinations, at POLINSKY – without consent, court order, exigency, and/or without their parents' presence. But, the COUNTY knowingly refrained from (1) revising its medical procedures, including as to examination and assessments, policies, procedures, practices and/or customs; (2) training its agents on the subject; and (3) disciplining (or counseling) its employees and agents.

38. At all relevant times herein, Defendant COUNTY established and/or followed policies, procedures, customs and/or practices (hereinafter collectively referred to as "policy" or "policies") which policies were the cause of violation of Plaintiffs' Constitutional rights granted to them pursuant to 42 U.S.C. § 1983, as well as the case of *Monell v. New York City Department of Social Services* 436 U.S. 658 (1978), including those under the Fourteenth Amendments to the United States Constitution as to their procedural and substantive due process rights, and including the right from interference with family relations, by the policy of conducting medical procedures, including examinations, of minor children, without judicial order, exigent circumstances, or consent of a custodial parent, and the policy of not notifying and prohibiting parents from being present during medical procedures, including examinations, assessments and/or treatment of their child.

39. Defendant COUNTY, as well as POLINSKY as an agent of the COUNTY, had a duty to Plaintiffs at all times: to establish, implement and follow policies, procedures, customs and/or practices which conform to and provide for the protections guaranteed them under the United States Constitution, including the Fourteenth Amendment; to use reasonable care to select, supervise, train, control and review the activities of all agents, officers and employees in their employ, including within POLINSKY; and further, to refrain from acting with deliberate indifference to the Constitutional rights of Plaintiffs so as to not cause them the injuries and damages alleged herein.

40. Defendant County breached its duties and obligations to Plaintiffs by, including but not limited to: failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review their agents and employees as to their compliance with Constitutional safeguards; and by permitting POLINSKY personnel to engage in the unlawful and unconstitutional medical procedures, including examinations and health assessments, as herein alleged.

41. Defendant COUNTY knew, or should have known, that by breaching the aforesaid duties and obligations, it was foreseeable that it would, and did, cause Plaintiffs to be injured and damaged by its wrongful policies and acts as alleged herein and that such breaches occurred in contravention of public policy and its legal duties and obligations to Plaintiffs.

42. The aforesaid actions, and /or inactions, of the COUNTY were the moving force behind the Plaintiffs' injuries, as alleged herein; and as a result, Plaintiffs have sustained general and special damages, including emotional distress, anxiety, fear, loss of control, violation of constitutional rights (including the right of privacy) and related rights, in an amount to be proven at trial.

43. These actions, or inactions, of Defendant COUNTY and its agents, are the legal cause of injuries to Plaintiffs as alleged herein; and as a result thereof, Plaintiffs have sustained general and special damages, as well as incurring attorney's fees, costs and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

**Jury Trial Demand**

Plaintiffs demand a jury trial for their Claims for Relief set forth above.

**Prayer for Relief**

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

1. General damages and special damages according to proof;

2. Attorney's fees, costs and expenses pursuant to 42 U.S.C. §1988, and any other appropriate statute;

3. Costs of suit incurred herein;

4. For a Jury Trial on all issues; and

5. Such further relief as the Court deems just and proper.

DATED: December 2, 2022                                STADLIN MARINHO LLP

*s/ Sarah E. Marinho*
Sarah E. Marinho
Attorney for Plaintiffs